In this suit, plaintiff, Mrs. Arie Almena Gore, individually as the surviving widow of Whitney V. Gore, her deceased husband, and on behalf of her minor child, Mattie Inez Gore, issue of her marriage with her deceased husband, as the legal dependents of the said Whitney V. Gore, is seeking, in the maximum amount under the Louisiana Employers' Liability Act, No. 20 of 1914, as amended, compensation, together with the sum of $250 for medical, funeral and burial expenses, from the defendant, Allen Haynes.
As a basis of her claim, she alleges, that while in the course and scope of his employment by the defendant, who was operating a saw mill and the hauling of timber from the woods to the said saw mill, on July 21, 1945, the said Gore, her deceased husband and father of her said minor daughter, was involved in an altercation, as a result of which he was fatally injured by a co-employee, Charlie Gilliland, death resulting on July 21, 1945.
The defense of the claim for compensation is that, at the time of the altercation, the decedent was not in the course and scope of his employment, that the decedent was intoxicated and was the aggressor in the said altercation.
Upon these issues the case was tried, and resulted in a judgment, with written reasons, dismissing plaintiff's suit. Plaintiff has appealed.
In the lower court there were three questions presented:
1st: Was the decedent, at the time of the altercation, in the course and scope of his employment?
2nd: Was the deceased intoxicated at the time and previous to his receiving the fatal injuries by the hand of his co-employee, and
3rd: Was the decedent the aggressor in the altercation?
The trial court, in his reasons for judgment, came to the conclusion that the decedent, at the time of receiving his fatal injuries, was not in the course and scope of his employment. We will confine ourselves only to a discussion of the evidence bearing on this conclusion.
The record shows that the decedent was employed by the defendant as a wagon loghauler in charge of mules and was working forty hours a week at the sum of 65¢ per hour whenever the weather permitted him to work the said forty hours for the week. The record further shows that he was to feed the mules, whenever he had worked them, after working hours. He was not employed on Saturdays unless it was needed to make the 40 hours for the week; if he did not work the mules on Saturday, then some other employee would feed them on the weekend. On the Saturday of the *Page 916 
fatal encounter, the preponderance of the evidence shows that the decedent's work-week had already ended and his services were not needed on that Saturday. During the morning, the decedent went to Clinton and obtained some whiskey, of which he freely imbibed. He returned to Norwood, the place of his residence and near the paying office of defendant. He received his weekly wage amounting to twenty-one dollars and sixty-eight cents ($21.68) for the week previous to the Saturday, February 21, 1945, after which, he remained around the office and then went to the town of Norwood, about a mile or half a mile away.
It is contended by the plaintiff that then the defendant instructed the decedent to accompany Henry (Stiff) Causey, a fellow employee, in the feeding of the mules at defendant's Camp near Amite River, and while so doing, he was assaulted by Gilliland, a fellow employee, with the resulting death of Gore. The plaintiff bears the burden of such proof, that is, to show that decedent was instructed by the employer to accompany Henry (Stiff) Causey in the feeding of the mules.
With reference to that contention, the evidence shows that between two and three o'clock on that Saturday evening, Gilliland, as driver of a truck owned by the defendant and loaded with five sacks of feed, decedent and Henry (Stiff) Causey left Norwood for the purpose of feeding the mules. They went by the way of Clinton, which was out of their way. At Clinton, the deceased purchased two pints of liquor. After leaving Clinton, they stopped at at least two places, the last being at Gilliland's home, and then proceeded in the direction of the barn. Upon reaching a point some half or a mile from the barn, Gilliland stopped the truck and thereafter the fateful altercation took place.
The only evidence which we can find in the record which would tend to support plaintiff in her contention is the testimony of Mrs. Ruth Lee, a sister of plaintiff, Miss Inez Gore, plaintiff's and decedent's daughter, and plaintiff, who testified that some hour or two prior to decedent's death defendant had stated that he had sent the deceased to feed the mules and the fact that the decedent was in defendant's truck some one-half to a mile from defendant's barn when the altercation took place.
As against that evidence we have the absolute denial of the defendant that he had instructed the decedent to accompany Henry (Stiff) Causey to feed the mules. Defendant is corroborated by Henry Causey to the effect that he (Causey) was to bring the feed to the barn and attend to the mules, and also by the testimony of Gilliland to the effect that he (Gilliland) as the immediate foreman of the deceased, deceased had no more duties to perform, not even the feeding of the mules. Defendant's testimony is further corroborated by the testimony of one Squire Sims, a witness for plaintiff, to the effect that he, the witness, was present at a conversation between the decedent and the defendant when Gore, the decedent, stated, "Allen (the defendant), do you want me to go and feed the mules?" and the defendant answered, "You don't have to; I told 'Stiff' (Henry Causey) to go, and bring the truck back again," thus clearly refuting the contention that he was willing or that he instructed the decedent to accompany Henry (Stiff) Causey in the feeding of the mules. The defendant also strenuously denied his having told the plaintiff, in the presence of her daughter and sister that he had sent the decedent to feed the mules.
We admit that there is some testimony to the effect that the decedent stated that he was going to feed the mules. All of these statements, however, were self serving declarations of the decedent and not borne by the direct evidence as above stated, and merely tends to show that decedent desired some excuse to go with Henry (Stiff) Causey in order that he would cause Causey to go to Clinton for the purpose of providing himself with whiskey for the Saturday evening and Sunday, it being shown that Gore had been indulging in intoxicating liquors on that Saturday morning.
The trial judge came to the conclusion that "There is no preponderance of the testimony which justifies a conclusion that the deceased on an errand for his master when he became involved in the fatal difficulty with his fellow employee", and "that he was not performing any duty within the scope of his employment or incidental *Page 917 
thereto on the Saturday of July 21, 1945," and after a careful review of the record, we find no reversible error in this conclusion.
Judgment affirmed.